UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JEROME ANTONIO LUNDY,

    Petitioner,

v.                                    Case No. 3:23-cv-134-HES-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

    Respondent.

## ORDER

### I. Status

Petitioner Jerome Antonio Lundy, an inmate of the Florida penal system, initiated this action through counsel on February 3, 2023, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1).[1] He is proceeding on an Amended Petition (Docs. 3, 3-1). In the Amended Petition, Petitioner challenges a 2011 state court (Duval County, Florida) judgment of conviction for attempted first-degree murder, attempted second-degree murder, and discharging a firearm from a vehicle. He raises one ground for relief. See Doc. 3-1 at 2–9. Respondents submitted a memorandum in opposition to the Petition. See Doc. 12. They also submitted exhibits. See

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

Docs. 15-1 through 15-16. Petitioner filed a brief in reply. See Doc. 18. This action is ripe for review.

## II. Relevant Procedural History

On September 2, 2011, a jury found Petitioner guilty of attempted first-degree murder (count one), attempted second-degree murder (count two), and discharging a firearm from a vehicle (count three). Doc. 15-4 at 2–5. On September 29, 2011, the circuit court sentenced Petitioner to a term of life imprisonment, with a twenty-year minimum mandatory, as to count one; a thirty-year term of imprisonment, with a twenty-year minimum mandatory, as to count two; and a fifteen-year term of imprisonment as to count three. Doc. 15-5 at 2–8. The First District Court of Appeal (First DCA) per curiam affirmed Petitioner's conviction and sentence on December 28, 2012, Doc. 15-9 at 2, and it issued the mandate on January 15, 2013, Doc. 15-10 at 2.

On March 28, 2014, Petitioner filed through counsel a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, raising one ground for relief. Doc. 15-11 at 6–21. Following an evidentiary hearing, the circuit court denied relief on all grounds. Id. at 188–98. On January 10, 2023, the First DCA per curiam affirmed the denial of relief without a written opinion, Doc. 15-15 at 2, and on February 3, 2023, it issued the mandate, Doc. 15-16 at 2.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318–19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Petitioner's] claim without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's

adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 584 U.S. 122, 125 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 125–26, 132.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d

5

389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Titlow, 571 U.S. at 19. "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102–03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per

7

curiam) (first citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); and then Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet

the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at ---, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds

9

another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

In his sole ground for relief, Petitioner alleges that counsel was ineffective when he failed to "adequately warn [Petitioner] of the sentencing consequences of a guilty verdict." Doc. 3-1 at 2. Petitioner asserts that before trial, counsel conveyed an offer from the State: if Petitioner pled guilty to the offenses charged, he would receive a sentence of ten years in prison. Id. Petitioner refused the offer. Id. According to Petitioner, counsel failed to advise him that if he proceeded to a trial and a jury found him guilty, he could receive a sentence of life in prison—the statutory maximum penalty for the offenses as charged in the information. Id. Petitioner claims that he would have accepted the State's offer of ten years in prison if counsel had explained the sentencing consequences of proceeding to a trial. Id.

Petitioner raised a substantially similar claim in his Rule 3.850 motion. Doc. 15-11 at 9–16. The circuit court held an evidentiary hearing, during which Petitioner called the following witnesses: his father, Ernest Lundy;

10

defense attorney Matthew Lufrano; and himself. The State called Petitioner's trial counsel, Christopher Blaisdell, and former assistant state attorney Jeffrey Moody.

Ernest Lundy testified that Mr. Blaisdell told him that the State had extended a ten-year plea offer to Petitioner. Doc. 15-11 at 331. According to Ernest Lundy, Mr. Blaisdell never informed him of the maximum sentence for the charges against Petitioner. Id.

Mr. Lufrano was an assistant public defender when he represented Petitioner; however, he had only minimal involvement with the case. Id. at 360–61.

Petitioner testified that before jury selection, Mr. Blaisdell told him that the State had made a ten-year plea offer. Id. at 339. According to Petitioner, Mr. Blaisdell stated that the plea offer was "mighty low for the charges." Id. at 340. Petitioner then asked Mr. Blaisdell if there was "a good chance that we can win at trial," and Mr. Blaisdell responded in the affirmative. Id. Petitioner testified that Mr. Blaisdell never informed him of the maximum sentence or minimum mandatory sentence for the charges against him. Id. at 340–41.

Mr. Blaisdell testified that he was an assistant public defender when he represented Petitioner. Id. at 368. Routinely, when Mr. Blaisdell began

representing a client, he would discuss with them the nature of the offense, general allegations, and maximum sentence. Id. at 371. He also would have discussed any plea offers from the State with a client, and while discussing such an offer, he would have referenced the maximum sentence for the charges. Id. at 373.

Although Mr. Blaisdell did not have an independent recollection of his discussions with Petitioner, Mr. Blaisdell, as part of his routine practice, would have informed Petitioner that the maximum sentence for attempted first-degree murder was life in prison. Id. at 372. Mr. Blaisdell testified that if the State had made a plea offer, he would have noted it in the public defender file. Id. at 378. However, the public defender file did not include such a notation. Id.

Mr. Moody similarly testified that if he had conveyed a plea offer, he would have noted it in the State's file. Id. at 401. However, the file did not contain such a notation. Id. at 402. Moreover, for Mr. Moody to have extended a plea offer in this case, he would have needed to request permission from his supervising attorney to waive the minimum mandatory sentence. Id. at 402–03. Mr. Moody testified that the State file did not show he requested permission from his supervisor, and such a waiver would be rare. Id. at 404–05.

The circuit court denied relief, stating in pertinent part:

> First, this Court does not find the testimony of Ernest Lundy to be credible. His testimony that trial counsel told him his son was facing 10 years in prison caused this Court to have grave doubts about his memory and recollection of his conversation with trial counsel. Moreover, he has a powerful incentive to help his son. The Court does not find Mr. Earnest Lundy's testimony that trial counsel told him the State made a 10 year plea offer to be credible.
>
> Second, this Court does not find the Defendant's testimony credible. The Court specifically rejects the Defendant's testimony that trial counsel came to him on the day of jury selection and told him the State made a 10 year offer. The Court also finds the Defendant's testimony incredible that he had no idea what he was facing if convicted. The Defendant was charged with two counts of attempted murder: one count of attempted murder in the first degree and one count of attempted murder in the second degree. The State charged in the Information that the Defendant actually possessed and discharged a firearm. Moreover, the Defendant's testimony, at the evidentiary hearing, that he asked no questions when counsel came to him on the day of jury selection with the State's "low" 10 year plea offer is simply not believable.
>
> Finally, based on the testimony at the evidentiary hearing, this Court finds that the State did not make a 10 year plea offer on the day of jury selection or, indeed, ever. The Court finds the testimony of Mr. Blaisdell and Mr. Moody to be credible as to this point. Trial counsel cannot be ineffective for misadvising the Defendant about the State's plea offer when no plea offer was ever made. [FN4]

> Because the Court has found no deficient performance, there is no need for this Court to address Strickland's prejudice prong. But even if the Court were required to do so, the Defendant's claim would fail. Because the Court has found the State did not make a 10 year offer, the Defendant cannot satisfy all of the Alcorn[2] factors.
>
> [FN4] The Defendant did not claim he ever made a plea offer. This Court acknowledges that both Mr. Blaisdell and Mr. Moody's independent recollection was affected by the passage of time but this Court finds that routine practice in annotating their files with significant events, like a 10 year plea offer, bolsters their testimony from their independent recollection. The fact that both counsel testified that plea offers, if made, would have been noted in the file coupled with their testimony that neither the State's nor Defendant's file had any notation about a 10 year plea offer was part and parcel of this Court's analysis of this claim.

Doc. 15-11 at 196–97. The First DCA per curiam affirmed the circuit court's order without a written opinion. Doc. 15-15 at 2.

To the extent that the First DCA decided this claim on the merits,[3] the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of

---

[2] Alcorn v. State, 121 So. 3d 419 (Fla. 2013).
[3] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 584 U.S. at 125.

14

clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to deference, it is without merit. In federal habeas proceedings, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). A petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. In reviewing claims of ineffective assistance of counsel where counsel does not have specific memories otherwise, courts may rely on an attorney's representation that his conduct at the time was in conformance with his general practice or habit. Dasher v. Att'y Gen., 574 F.3d 1310, 1314 (11th Cir. 2009).

The Court finds Petitioner has failed to provide any evidence to meet his burden of overcoming the presumption of correctness as to the circuit court's factual finding that counsel's testimony was credible. As such, the Court presumes counsel's testimony is credible. 28 U.S.C. § 2254(e)(1). Further, although counsel did not have an independent recollection of the case, he detailed his general practice of noting plea offers in his file and

informing clients of any plea offers, as well as the maximum sentence for the offenses charged. Accordingly, counsel's testimony that his conversations with Petitioner would have conformed with his general practice is sufficient to refute Petitioner's claim of deficient performance. See Dasher, 574 F.3d at 1314.

Insofar as Petitioner argues that "he still received ineffective assistance of counsel when his counsel failed to advise him of the extremely likely sentencing consequences of proceeding to trial [because] [] had he been so advised, he would have insisted on negotiating a plea with the State," he is still not entitled to relief. Doc. 18 at 2. Vague, conclusory, speculative, or unsupported claims cannot establish an ineffective assistance of counsel claim. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991). More than mere conceivability is required to establish prejudice; indeed, the likelihood of a different result must be substantial, not just conceivable. Jenkins v. Comm., Ala. Dep't of Corr., 963 F.3d 1248, 1264 (11th Cir. 2020). The Court finds this claim is conclusory and speculative because Petitioner merely alleges, without support, that the State would have offered a plea deal, the trial court would have approved the deal, and Petitioner would have accepted it. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El, 537 U.S. at 335–36 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

17

Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now **ORDERED**:

1. The Amended Petition (Doc. 3) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2. The Clerk shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3. If Petitioner appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of January, 2026.

HARVEY E. SCHLESINGER
United States District Judge

Jax-9 1/15
c:    Counsel of record

19